## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TRILOGY FEDERAL, LLC<br>1100 Wilson Blvd., Suite 1100<br>Arlington, Virginia 22209 | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| CivitasDX LLC<br>9920 Pacific Heights Blvd., Suite 150<br>San Diego, California 92121-4361, | ) | |
| | ) | |
| COGNITIVE MEDICAL SYSTEMS, INC.<br>9920 Pacific Heights Blvd., Suite 150<br>San Diego, California 92121-4361, | ) | |
| | ) | |
| HALFAKER AND ASSOCIATES, LLC<br>2900 South Quincy Street, Suite 375<br>Arlington, Virginia 22206, | ) | |
| | ) | |
| SCIENCE APPLICATIONS INTERNATIONAL<br>CORPORATION<br>12010 Sunset Hills Road<br>Reston, Virginia 20190, | ) | |
| | ) | |
| CLIENT FIRST TECHNOLOGIES, INC.<br>4616 Dixie Hill Road<br>Fairfax, Virginia 22030-6112, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KILA THOMAS<br>11431 Tiger Lily Lane<br>Fairfax, Virginia | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff TRILOGY FEDERAL, LLC ("Trilogy" or "Plaintiff") brings this Complaint against Defendants CivitasDX LLC ("CivitasDX"), COGNITIVE MEDICAL SYSTEMS, INC. ("Cognitive Medical"), HALFAKER AND ASSOCIATES, LLC ("Halfaker"), SCIENCE APPLICATIONS INTERNATIONAL CORPORATION ("SAIC"), CLIENT FIRST TECHNOLOGIES, INC. ("Client First"), and KILA THOMAS ("Thomas") (collectively, "Defendants"), alleging as follows:

**NATURE OF THE ACTION**

1.      Plaintiff Trilogy, a Service-Disabled Veteran-Owned Small Business ("SDVOSB"), is one of the government's leading contractors for the modernization and transformation of U.S. federal agencies' financial management systems.  From 2016 until mid-2021, Trilogy served as the subcontractor on a contract with the United States Department of Veterans Affairs (the "VA"), with responsibility for implementing and maintaining the VA's Financial Management System ("FMS") and Management Information Exchange ("MinX") system (the "2016 VA Contract").  For the duration of the 2016 VA Contract, it was Trilogy's personnel who exclusively performed the services required under the contract, and the VA repeatedly expressed its satisfaction with Trilogy's performance.

2.      When it came time in 2021 to renew the contract for the VA's FMS and MinX systems work (the "2021 VA Contract"), however, the Defendants joined together to misappropriate Trilogy's trade secret and confidential business information to prepare their own competing bid.  The Defendants had access to Trilogy's highly confidential know-how and prior 2016 proposal through Defendant Kila Thomas, Trilogy's recently departed Director of Business Development.

3.      At the time the 2021 VA Contract was put up for bid, it was well understood in the IT consulting industry that Trilogy's expertise and past performance for the VA meant that a competing bidder was highly unlikely to be successful without Trilogy on its team.  Trilogy and the industry were therefore surprised to learn that the 2021 VA Contract had been awarded to Defendant CivitasDX (an unpopulated joint venture of Defendants SAIC/Halfaker and Cognitive Medical) and its teaming partners, which included Client First (Thomas's new employer).

4.      In 2021, none of the Defendants possessed sufficient technical knowledge of the VA's systems or the experience necessary to prepare a bid proposal sufficient to satisfy the VA's technical standards or to compete with Trilogy.  Thus, the Defendants succeeded only because they had teamed together to prepare a proposal using confidential trade secret information they had improperly acquired from Trilogy—all to wrest the contract away from Trilogy.

5.      Fully aware that CivitasDX completely lacked the technical knowledge to perform the 2021 VA Contract, Defendant Thomas and representatives from CivitasDX, SAIC, Halfaker and General Dynamics Information Technology ("GDIT") (another teaming partner), repeatedly solicited Trilogy's employees to leave Trilogy and join CivitasDX —before, during and after the 2021 bidding process to no avail.  As a result, the Defendants quickly found themselves completely incapable of performing the contract they had just been awarded.

6.      It was therefore no surprise that CivitasDX struggled significantly to perform the 2021 VA Contract to the VA's satisfaction.  In fact, after awarding the contract to CivitasDX, the VA realized that it was necessary to extend Trilogy's 2016 contract for a short period, in hopes of easing the transition to a new contractor that was sorely unprepared and lacked technical knowledge.  CivitasDX's performance over the next few years was plagued with difficulties—

upon information and belief, leading the VA to notify CivitasDX in writing of various areas of deficiency in its performance.

7.     The VA's dissatisfaction with CivitasDX's performance culminated with its issuance of a supplemental Request for Information ("RFI") for FMS support services in April 2024 and subsequent Request for Proposals ("RFP") in August 2024, even though the 2021 VA Contract is not set to expire until March 2025.  This supplemental request for bids further evidences CivitasDX's poor performance and the VA's dire need for assistance.  As part of the VA's issuance of the April 2024 RFI, the VA acknowledged that CivitasDX had been "unable to consistently meet [the] service requirements" and that it was "incumbent upon [the VA] to repair this issue and get these services in place now."

8.     CivitasDX's poor performance was to be expected, however, since its 2021 proposal was prepared using confidential, trade secret information taken from Trilogy, rather than CivitasDX's own skill and expertise.  Trilogy therefore brings this action against Defendants for their theft and misuse of Trilogy's proprietary, confidential trade secret information.  Trilogy seeks monetary relief, including compensatory damages, disgorgement, punitive damages, attorneys' fees and costs, and any other relief the Court deems necessary to remedy and rectify the Defendants' unlawful conduct.

## PARTIES

9.     Plaintiff Trilogy Federal, LLC is a management and IT consulting firm that specializes in implementing and maintaining federal financial management systems.  Trilogy is a limited liability company formed under the laws of the Commonwealth of Virginia and headquartered at 1100 Wilson Blvd., Suite 1100, Arlington, Virginia 22209.

10.     Defendant CivitasDX is a competitor of Trilogy and a limited liability company formed under the laws of the State of California with its principal place of business at 9920 Pacific Heights Boulevard, Suite 150, San Diego, California, 92121-4361.  Upon information and belief, CivitasDX is an unpopulated joint venture with no employees of its own and whose members are Defendants Cognitive Medical (citizen of Delaware and California) and Halfaker (citizen of Virginia).   CivitasDX led the preparation of the 2021 bid at issue in this dispute and is the prime contractor on the 2021 VA Contract, which was submitted to and awarded by the VA in the District of Columbia.

11.     Defendant SAIC is a Delaware corporation with its principal place of business at 12010 Sunset Hills Road, Reston, Virginia, 20190.   On July 2, 2021, SAIC completed its acquisition of Halfaker, a member of CivitasDX.  SAIC played an active role in the preparation of CivitasDX's bid submitted to the VA in the District of Columbia and the performance of the 2021 VA Contract.

12.     Defendant Cognitive Medical is a Delaware corporation with its principal place of business at 9920 Pacific Heights Blvd., Suite 150, San Diego, California, 92121-4361.  It is a member of CivitasDX and played an active role in the preparation of CivitasDX's bid submitted to the VA in the District of Columbia and the performance of the 2021 VA Contract.

13.     Defendant Halfaker is a limited liability company whose sole member is SAIC.  As alleged above, SAIC acquired Halfaker in July 2021.  SAIC is a Delaware corporation with its principal place of business in Virginia.  Halfaker's principal place of business is at 2900 South Quincy Street, Suite 375, Arlington, Virginia, 22206.  It is a member of CivitasDX and played an active role in the preparation of CivitasDX's bid submitted to the VA in the District of Columbia and the performance of the 2021 VA Contract.

14.     Defendant Client First is a Virginia corporation with its principal place of business at 4616 Dixie Hill Rd, Fairfax, Virginia, 22030-6112.  Client First is a subcontractor on the 2021 VA Contract and Defendant Thomas's current employer.

15.     Defendant Thomas is a resident of Fairfax, Virginia.  From November 2017 to March 2021, Thomas was Trilogy's Director of Business Development.  In March 2021, unhappy with Trilogy's decision not to promote her, Thomas left Trilogy to work for its competitor, Defendant Client First.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action involving federal questions related to claims for, among other things, trade secret misappropriation under the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, *et seq*.  The Court may exercise supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy.

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District; Defendants are subject to personal jurisdiction in this District; and/or the Defendants have committed torts in whole or in part in this District.

18.     The Court has personal jurisdiction over each of the Defendants because Defendants have contacts with this jurisdiction sufficient to subject them to personal jurisdiction in this District, including but not limited to the acts giving rise to this action.

## FACTUAL ALLEGATIONS

### *Trilogy's Business and the 2016 VA Contract*

19.     Trilogy, a management and IT consulting firm, was founded in 2009 with the goal of providing its clients and partners, most of which are veteran-related federal government agencies, with approaches to solve programmatic and technological challenges.  Trilogy works to modernize the federal government's existing technology to meet financial management objectives. As an expert and leader in the field, Trilogy currently has more than thirty active government contracts and more than forty partnerships across the federal-civilian space.  As a SDVOSB, when selecting contracts for which it will bid, Trilogy places a special emphasis on serving U.S. Veterans.

20.     Prior to the founding of Trilogy, Trilogy's leadership worked for American Management Systems ("AMS") (now CGI Inc.), the vendor that developed the FMS software utilized by federal agencies.  At AMS, Trilogy's leadership developed the unique skillsets that allow them to run and maintain the software that the VA now uses.  Notably, because AMS never partnered with vendors to integrate their software with other systems, there are a very limited number of individuals (including Trilogy's leadership team) with the requisite knowledge to operate and support the baseline FMS software.  Moreover, because vendor support for FMS was discontinued more than fifteen years ago, expertise in FMS is critical but increasingly scarce. Upon information and belief, no former AMS and/or Trilogy employees with the necessary FMS software capabilities are currently employed by any of the Defendant entities.

21.     As a result of its subject matter expertise and mission, Trilogy (through a prime contractor partner) won the 2016 VA Contract after successfully bidding in response to RTEP T4-0838, FMS Production, Annual Close and Audit Support, a Request for Task Execution Plan issued

by the VA, Office of Information & Technology, in conjunction with the Office of Financial Business Operations.  This service contract called for the sustainment and modernization of the FMS and MinX financial systems that serve as the VA's accounting system of record.

22.     For the 2016 VA Contract, Trilogy was not eligible as a prime contractor and, thus, was formally listed as the subcontractor to its teaming partner, prime contractor SRA International Inc., a wholly-owned subsidiary of CSRA, Inc. (which was acquired by General Dynamics in April 2018 and thereafter became part of GDIT).  Despite its subcontractor status, however, it was Trilogy that exclusively prepared the technical proposal that ultimately led to the award of the 2016 VA Contract.  SRA International played no role in the drafting of the 2016 proposal and joined the bidding team mere days before the bid was submitted.

23.     Over the life of the 2016 VA contract, Trilogy performed all the work required under the contract, and Trilogy had sole responsibility for managing the VA's FMS and MinX systems.  Throughout the performance of the Contract, Trilogy consistently received positive feedback from the VA.

24.     The 2016 VA contract was set to expire on July 31, 2021; however, the VA extended Trilogy's contract to November 30, 2021, primarily due to its delays in issuing a request for proposals for the next contract for the FMS and MinX support work.  In August 2021, the VA issued a new Performance Work Statement ("PWS") for Transformation Twenty-One Total Technology Next-Generation ("T4NG") Request for Task Execution Plan ("RTEP") 0580 for Consolidated Corporate Support Services to continue the FMS and MinX work.  Considering the positive feedback that it had received from 2016 to mid-2021, Trilogy began preparing a bid to allow it to continue its highly praised work for the VA.

25.     Trilogy first assembled its bidding team. Because GDIT (formerly SRA International at the time of bidding for the 2016 contract) was not eligible to act as the prime contractor for the 2021 contract, Trilogy identified a new company, B3 Group, to serve as the prime contractor.  Trilogy and B3 agreed to work together to bid for the 2021 VA Contract.

26.     In the meantime, Defendants CivitasDX and Client First teamed with GDIT to bid on the 2021 contract.  Recognizing that CivitasDX lacked the necessary expertise to perform the contract, GDIT attempted to convince Trilogy to join CivitasDX's team, which Trilogy declined.

27.     CivitasDX is a limited liability company consisting of members Cognitive Medical and Halfaker (now part of SAIC).  Upon information and belief, CivitasDX is an unpopulated joint venture between Cognitive Medical and SAIC, and thus has no employees of its own but, instead, acts through the employees of the joint venture partners.

28.     Trilogy, with B3 Group and several other subcontractors, submitted its bid for the 2021 contract on August 26, 2021.  At this time, it was well understood within the IT consulting industry that a bidder very likely would only be successful if it had Trilogy, the highly experienced incumbent service provider, on its team.  Trilogy's personnel at that time had decades of experience with the legacy FMS used by the VA, as well as a deep understanding of (and direct involvement in) various customizations and enhancements to the VA's FMS implemented over the years.  Thus, Trilogy was uniquely positioned to design a proposal in 2021 that would meet the VA's needs.

29.     On September 29, 2021, however, Trilogy was notified that the 2021 VA Contract had been awarded to CivitasDX and its teaming partners.  The award came as a surprise to Trilogy and the industry as a whole, particularly since CivitasDX, its members, and its teaming partners lacked the technical expertise required to perform the contract.  As a result, after the contract was

awarded, Trilogy came to the realization that the CivitasDX proposal must have relied on the improper use of Trilogy's highly confidential trade secrets. Trilogy's beliefs were later confirmed by CivitasDX's subsequent poor performance on the project and the VA's requests to Trilogy for additional resources and assistance.

30.     Further, it would not have been possible for CivitasDX to have prepared a bid proposal sufficiently responsive to the technical requirements of the solicitation with any level of sophistication or detail without access to Trilogy's 2016 bid or other proprietary, internal information held by Trilogy. In fact, sources within the local government contracting industry informed Trilogy's leadership that the Defendants prepared CivitasDX's bid using information taken from a copy of Trilogy's 2016 proposal.

31.     Trilogy suffered extensive harm as a result of its loss of the 2021 VA Contract to CivitasDX. Although the FMS and MinX work that Trilogy would have performed made up only a portion of the overall work required by the 2021 VA Contract, the FMS and MinX work was the VA's first and highest priority. Thus, the success of the bid was directly and disproportionately tied to those aspects of the proposal that related to FMS and MinX. Given this importance, Trilogy and its teaming partners agreed that Trilogy would receive a share of the contract revenue that was meaningfully greater than the revenue earned for the FMS and MinX work alone. Further, B3 and Trilogy's teaming agreement provided that, if the bid were successful, Trilogy would be given future bidding opportunities with B3, as well as staffing on B3's existing projects.

### *Trilogy's Confidential Information and Trade Secrets*

32.     As described above, Trilogy was founded by former managers of AMS, the well-respected government contracting firm that developed the FMS used by the VA. Each of Trilogy's founders have years of experience developing, implementing and supporting the legacy FMS software package and processes used by the VA.

33.     In addition to their decades of experience with FMS generally, Trilogy's professional staff members have worked to support the VA FMS since the original implementation of the system in 1996, and they also served as the core FMS Service support team from 2000 through 2009.  Historically, Trilogy staff supported not only the original implementation of FMS at the VA, but also a number of initiatives, customizations and enhancements to the FMS and MinX system over the years.

34.     To effectively conduct its business and compete in the marketplace, Trilogy relies upon the know-how and expertise it has developed over many years.  Trilogy harnesses this expertise by developing comprehensive, compelling proposals in response to each federal contracting bid it submits, including its bids for the VA's 2016 and 2021 contracts.  These proposals, including the proposal submitted for the 2016 VA Contract, contained and reflected highly valuable confidential and proprietary information related to Trilogy's business.  That information constitutes Trilogy's trade secrets (the "Trade Secret Information").

35.     Trilogy has developed its highly confidential strategies and procedures for IT system management over its many years of experience supporting federal clients in IT system modernization, including its staff's decades of experience with FMS and MinX.  This expertise is reflected in the Trade Secret Information that Trilogy included in its proposal for the 2016 VA Contract.

36.     The Trade Secret Information contained in Trilogy's proposal for the 2016 VA Contract includes, but is not limited to, identification of anticipated challenges and issues with the FMS and MinX software, as well as strategies for overcoming and addressing those issues and ensuring the smooth operation of the VA's financial management system.  The Trade Secret Information also reflected technical assessments of the systems, strategies for software

configurations and designs, and recommended operational strategies to satisfy the VA's service requirements.

37.     Trilogy's 2016 Proposal thus contained a variety of Trade Secret Information that Trilogy developed through its vast experience supporting the VA's FMS and MinX systems.  For example, the 2016 Proposal included:

(a)     Descriptions of specific deliverables that Trilogy would provide, such as coding and software enhancements;

(b)     Insight into the challenges that arise when changes are made to operating procedures, and strategies for addressing those challenges;

(c)     Descriptions of potential problems that can arise with external system interfaces and a proposed approach to solving those problems;

(d)     Descriptions of Trilogy's knowledge regarding the limitations of the legacy technical environment and suggested steps that must be taken to maintain data standards;

(e)     Descriptions of concerns previously identified by the VA's external auditors and a proposed methodology for remediating those concerns;

(f)     Detailed multi-step strategies to manage and prioritize day-to-day technical issues;

(g)     Descriptions of historic deliverables previously provided by Trilogy, including coding enhancements and fixes, and a proposed strategy for maximizing the benefits of this prior work;

(h)     Identification of specific daily functions to be managed to mitigate the risk of software down-time;

(i)     Descriptions of specific support strategies for each task area identified in the VA's request for proposals;

(j)     Description of specific steps to be taken to support interface development;

(k)     Details regarding Trilogy's strategy for ensuring the proper configuration of FMS tables;

(l)     Recommendations with respect to certain data management practices;

(m)     Description of Trilogy's intended strategic approach to batch processing;

(n)     Details regarding Trilogy's four-phase strategy for Annual Close support, including task details and strategies for each phase; and

(o)     Numerous cost-avoidance strategies.

38.    As is typical, Trilogy's proposal for the 2016 VA Contract containing its Trade Secret Information was submitted to the VA on a confidential basis. Trilogy's government contract proposals are not made available to the public, and Trilogy has gone to great lengths to protect its Trade Secret Information by, among other things:

(a)     Implementing confidentiality agreements with third parties, which describe Trilogy's Trade Secret Information and impose non-disclosure obligations;

(b)     Implementing policies for employees on the importance of maintaining the confidentiality of Trilogy's Trade Secret Information;

(c)     Disclosing Trilogy's Trade Secret Information to only those persons who need to know such information to perform their work for Trilogy;

(d)     Maintaining Trilogy's Trade Secret Information on password-protected computer systems that restrict access to Trilogy's information only to Trilogy employees and to only those files which access is necessary for the employee;

(e)     Immediately following an employee's termination, requiring the return of all Trilogy-owned property, including access to all Trade Secret Information, and suspending that employee's Trilogy accounts; and

(f)     Investigating and taking prompt action whenever Trilogy learns that someone is wrongly using Trilogy's Trade Secret Information, to attempt to stop such use.

39.     Trilogy shares its Trade Secret Information with its third-party business partners solely on a need-to-know, business-related basis and pursuant to obligations of confidentiality. When sharing of Trade Secret Information is required, Trilogy shares only the information necessary for Trilogy to collaborate with its business partners to fully address a federal agency's needs.

40.     This Trade Secret Information affords Trilogy with a competitive advantage over other companies that provide similar services to the federal government and derives independent economic value from not being publicly known.  Trilogy and its staff have invested more than fifteen years and significant resources to develop its Trade Secret Information in relation to the VA's FMS modernization and support.

### *Defendant Kila Thomas Improperly Shares Trilogy's Trade Secrets*

41.     In March 2021, as the 2016 VA Contract was reaching its expiration, Defendant Thomas abruptly left her job as Trilogy's Director of Business Development, angered because Trilogy had not given her a promotion.  She accepted a position at Client First, a start-up SDVOSB IT contractor and Trilogy's competitor.

42.     Thomas left Trilogy on bad terms and, upon information and belief, unfairly made disparaging comments about Trilogy to Client First and her other contacts in the industry after her departure.

43.     As Director of Business Development, Thomas did not work in a technical capacity at Trilogy and did not develop any technical know-how or expertise that she would have been able to impart upon her new employer.  Instead, Thomas served in a non-technical business-generation role.  In her role, she did have access to Trilogy's government contract bids and proposals, including the 2016 VA Contract proposal and the Trade Secret Information it contained.

44.     Upon information and belief, Thomas shared with Defendant Client First and its Defendant teaming partners a copy of Trilogy's winning proposal for the 2016 VA Contract and other highly confidential information related to Trilogy's performance of the 2016 VA Contract. Upon information and belief, Client First and its Defendant teaming partners (CivitasDX, Cognitive Medical, and Halfaker/SAIC), knowing that this information was highly confidential and that the source of the information was Trilogy, used the stolen information to prepare CivitasDX's proposal and bid on the 2021 VA Contract.

45.     Because CivitasDX and its teaming partners lacked experience with the VA's FMS and MinX systems and had no employees with experience providing the services required by the 2021 VA Contract, they could not have prepared a successful bid for the contract without using the highly confidential Trade Secret Information found in the 2016 Proposal stolen from Trilogy.

46.     Thomas' actions were in violation of the policies governing her employment with Trilogy, including but not limited to the policies found in Trilogy's Employment Handbook, which all Trilogy employees are required to review and to follow.  The Employee Handbook states that "no employee of Trilogy during his/her employment or at any time following termination of employment shall communicate in any manner, directly or indirectly, to any other person including other employees of Trilogy any Confidential Information." Confidential Information is defined in the handbook to include, for example, "nonpublic information regarding the Company's business

methods and plans . . . know-how, products, services, research, development . . . and methods of competing."

47.    Defendants were fully aware of Thomas's confidentiality obligations to Trilogy because such confidentiality requirements are very common in the government contracting industry.  Additionally, Defendants would have been aware of the highly confidential nature of federal procurement bids and proposals.  Further, Defendants were fully aware that Thomas held only a business development role at Trilogy and, thus, would not have possessed any technical skill or expertise of her own relevant to the 2021 VA Contract.

### *Solicitation of Trilogy's Employees*

48.    Defendants lacked the knowledge and experience necessary to perform the 2021 VA Contract.  Additionally, because the VA's FMS operates on a customized software that differs from that of other federal agencies (and thus knowledge of other agencies' systems is not transferrable), Defendants needed the assistance of Trilogy employees, as they were some of the only individuals that understood the VA's system.

49.    Thus, even before CivitasDX submitted its bid to the VA in 2021, individuals associated with CivitasDX and its teaming partners, including Eileen Salle (a Senior Software Engineer from SAIC), John Madden (a Program Manager from GDIT), Tony Vallin (a Program Management Director from Halfaker), and Bryan Lima (a Senior Recruiter from SAIC), sought to solicit Trilogy employees to assist in preparation of CivitasDX's bid and the Defendants' performance of the contract.

50.    Trilogy employees refused these solicitations, which began in April 2021 and continued through at least early 2022.

51.     Several of the solicitations sent to Trilogy employees after CivitasDX was awarded the contract came from the Defendants' employees using "VA.org" email addresses or through the VA's Microsoft Teams system.  This is in violation of the VA's Technology Acquisition Center's "Use of VA Resources" Policy, which prohibits the use of VA resources for recruiting and solicitation purposes.  Accordingly, on November 5 and November 19, 2021, Trilogy's leadership contacted the VA to request that it ask its new contractor to cease its solicitations of Trilogy employees, particularly through the use of VA resources.

### *Defendants' Unsatisfactory Performance of the 2021 Contract*

52.     After awarding the contract to CivitasDX, the VA quickly began to realize that its new contractor was ill-equipped to take over the work from Trilogy.  Thus, the VA sought to further extend the Trilogy contract through December 31, 2021, in hopes that the incumbent Trilogy could assist with the transition to a new vendor.  Trilogy declined to provide FMS support during this additional one-month extension because its personnel were needed for other projects, although it did continue to provide a small amount of MinX support.

53.     Without Trilogy's help, CivitasDX and its members (Halfaker/SAIC and Cognitive Medical) recognized that they lacked the expertise needed to successfully perform.  Thus, Defendants initially sought Trilogy's involvement as a subcontractor on the 2021 VA Contract. Doug Burke, the President and co-founder of both Cognitive Medical and CivitasDX, subsequently offered a subcontract to Trilogy for the engagement of one, half-time Trilogy subject matter expert, but Trilogy declined both proposals.

54.     Upon information and belief, to date, CivitasDX, its members, and the Defendant teaming partners have been unable to satisfactorily perform the 2021 VA Contract and, when asked

by the VA why they did not have personnel familiar with the system, CivitasDX and its members admitted to the VA that they had intended to hire Trilogy's employees to execute the work.

55.     Upon information and belief, the VA notified CivitasDX in writing of various areas of deficiency in its performance of the 2021 VA Contract.  In 2022, hoping to find the support it could not get from CivitasDX, the VA engaged a small Trilogy team to assist with FMS management.  As recently as the summer of 2024, the VA has called on the Trilogy team to assist with its Annual Close, which CivitasDX and its teaming partners have been unable to perform successfully.

56.     Defendants' 2021 VA Contract is set to expire in March 2025; however, on April 16, 2024, the VA, at the insistence of its Office of Finance, issued an RFI for Financial Data Reconciliation Support Services (RFI Request:  VA-24-00065607;  Solicitation Number: 36C10B24Q0337) and a PWS for these support services.  The RFI included options that, if exercised, could cover all the tasks included in the 2021 VA Contract—thus reflecting the VA's recognition that it must look beyond CivitasDX for FMS and MinX support.

57.     In response to Trilogy's question regarding the VA's rationale for this supplemental RFI, the VA made it clear that there was an urgent need to address the Defendants' failed performance.  The VA responded in the RFI Questions and Answers for VA-24-00065607 published on April 24, 2024 that "[i]n Sep 2021, instead of awarding a separate support services contract, there was an attempt to get the sustainment Vendor to provide the required application services.  They were unable to consistently meet those service requirements.  It is incumbent upon us to repair this issue and gets these services in-place now."

58.     On August 8, 2024, the VA released an RFP in follow up to the April 2024 RFI. Responses to that RFP were due on August 22, 2024.

59.     The Defendants' inability to perform the services required by the 2021 VA Contract, as demonstrated by the VA's continued reliance on the Trilogy team, the VA's 2024 RFI and RFP, and Defendants' solicitation of Trilogy employees and outreach to Trilogy for a subcontract, is further evidence that Defendants' 2021 winning proposal was not born of their own expertise and know-how but, rather, was the product of their blatant theft of Trilogy's Trade Secret Information.

## CLAIMS FOR RELIEF

### COUNT I

**Federal Misappropriation of Trade Secrets:**
**Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.***
**(Against All Defendants)**

60.     Trilogy incorporates Paragraphs 1 through 59 above by reference.

61.     The actions of Defendants, as set forth herein, constitute trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.*

62.     Trilogy is the owner of certain confidential and proprietary information, including the Trade Secret Information identified herein, which information constitutes trade secrets within the meaning of 18 U.S.C. § 1839.  This includes, but is not limited to, information contained in Trilogy's 2016 proposal to the VA, as described in paragraphs 36 and 37 above.

63.     Trilogy's Trade Secret Information derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person.

64.     At all relevant times, Trilogy has taken reasonable measures to maintain the secrecy and confidentiality of this information, including the measures set forth herein.

65.     Defendants CivitasDX, Client First, SAIC, Cognitive Medical, and Halfaker acquired Trilogy's Trade Secret Information and had knowledge or reason to know that the Trade Secret Information had been acquired by improper means.

66.     Additionally, Defendants used Trilogy's Trade Secret Information for personal gain and a competitive advantage by including these trade secrets in their own 2021 bid for the 2021 VA Contract.

67.     Defendants CivitasDX, Client First, SAIC, Cognitive Medical, and Halfaker used improper means to acquire knowledge of Trilogy's Trade Secret Information.

68.     Additionally, or in the alternative, Defendants at the time of their use of Trilogy's trade secrets knew or had reason to know that their source of Trilogy's trade secrets was Thomas, and that Thomas had used improper means to acquire the Trade Secret Information, and/or that Thomas had a duty to maintain the confidentiality of the Trade Secret Information that she had access to by virtue of her employment with Trilogy.

69.     At the time of her disclosure of Trilogy's Trade Secret Information to the other Defendants, Defendant Thomas did not have Trilogy's express or implied consent to disclose the information.  None of the Defendants had the express or implied consent of Trilogy to use the Trade Secret Information.

70.     Defendant Thomas acquired Trilogy's trade secrets under circumstances giving rise to a duty to maintain the secrecy of those trade secrets and/or owed a duty to maintain the secrecy of the trade secrets.

71.     As a direct and proximate cause of Defendants' wrongful conduct, Trilogy has suffered direct and consequential damages and is entitled to compensatory damages under 18 U.S.C. § 1836, including enhanced damages in an amount to be proven at trial.

72.     Additionally, Defendants have been unjustly enriched as a result of their misappropriation of Trilogy's protected trade secrets.

73.     Further, Defendants' conduct constitutes knowing, willful, and malicious misappropriation, and thus Trilogy is entitled to an award of punitive damages and attorneys' fees.

## COUNT II

### Misappropriation of Trade Secrets Under State Law
### (Against All Defendants)

74.     Trilogy incorporates Paragraphs 1 through 73 above by reference.

75.     The actions of Defendants, as set forth herein, constitute trade secret misappropriation under the District of Columbia Uniform Trade Secrets Act, D.C. Code §§ 36-401, *et seq.* or other applicable state law.

76.     Trilogy is the owner of certain confidential and proprietary information, including the Trade Secret Information identified herein, which information constitutes trade secrets within the meaning of D.C. Code § 36-401(4).  This includes, but is not limited to, information contained in Trilogy's 2016 proposal to the VA, as described in paragraphs 36 and 37 above.

77.     Trilogy's Trade Secret Information derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person.

78.     At all relevant times, Trilogy has taken reasonable measures to maintain the secrecy and confidentiality of this Trade Secret Information, including the measures set forth herein.

79.     Defendants CivitasDX, Client First, SAIC, Cognitive Medical, and Halfaker acquired Trilogy's Trade Secret Information and had knowledge or reason to know that the Trade Secret Information had been acquired by improper means.

80.     Additionally, Defendants used Trilogy's trade secrets for personal gain and a competitive advantage by including these trade secrets in their 2021 bid for the 2021 VA Contract.

81.     Defendants Civitas DX, Client First, SAIC, Cognitive Medical, and Halfaker used improper means to acquire knowledge of Trilogy's Trade Secret Information.

82.     Additionally, or in the alternative, Defendants at the time of their use of Trilogy's trade secrets knew or had reason to know that their source of Trilogy's trade secrets was Thomas, and that Thomas had used improper means to acquire the Trade Secret Information, and/or that Thomas had a duty to maintain the confidentiality of the Trade Secret Information that she had access to by virtue of her employment with Trilogy.

83.     At the time of her disclosure of Trilogy's Trade Secret Information to the other Defendants, Defendant Thomas did not have Trilogy's express or implied consent to disclose the information.   None of the Defendants had the express or implied consent of Trilogy to use the Trade Secret Information.

84.     Defendant Thomas acquired Trilogy's trade secrets under circumstances giving rise to a duty to maintain the secrecy of those trade secrets and/or owed a duty to maintain the secrecy of the trade secrets.

85.     As a direct and proximate cause of Defendants' wrongful conduct, Trilogy has suffered direct and consequential damages, and is entitled to recover compensatory damages under D.C. Code § 36-404 or other applicable state law, including enhanced damages in an amount to be proven at trial.

86.     Additionally, Defendants have been unjustly enriched as a result of their misappropriation of Trilogy's protected trade secrets.

87.     Further, Defendants' conduct constitutes knowing, willful, and malicious misappropriation, and thus Trilogy is entitled to an award of punitive damages and attorneys' fees.

## COUNT III

### Breach of Contract
### (Against Kila Thomas)

88.     Trilogy incorporates Paragraphs 1 through 87 above by reference.

89.     The confidentiality obligations contained in Trilogy's Employee Handbook constitute a valid and legally enforceable contract, ancillary to Trilogy's employment relationship with Thomas, supported by adequate consideration and entered into freely by Thomas without duress or compulsion.

90.     Thomas' contractual obligations are reasonable in scope and no broader than necessary to protect Trilogy's legitimate business interests in, among other things, ensuring a stable workforce, safeguarding confidential information, and protecting longstanding customer relationships and other goodwill of the Company.

91.     Trilogy provided adequate and sufficient consideration to Thomas in exchange for her commitment to fully comply with her contractual obligation to not communicate any Confidential Information to other persons.

92.     Thomas entered into this confidentiality agreement as a condition of employment with Trilogy, including the compensation associated therewith, and in exchange for the protection of Trilogy's Confidential Information.

93.     But for her affiliation with Trilogy, Thomas would not have had access to Trilogy's Confidential Information.

94.     Trilogy has fully performed and fulfilled its obligations under the confidentiality agreement.

95.     Upon information and belief, Thomas violated the agreement by failing to return and disclosing Trilogy's Confidential Information for her personal benefit, and for the benefit of her new employer (Client First) and the other Defendants, including CivitasDX, Cognitive Medical Systems, Halfaker, and SAIC.

96.     As a direct and proximate result of Thomas' breach of contract, Trilogy has suffered damages in an amount to be proven at trial.

## COUNT IV

### Tortious Interference with Contract with Thomas
### (Against Client First Technologies, CivitasDX, Cognitive Medical, Halfaker, and SAIC)

97.     Trilogy incorporates Paragraphs 1 through 96 above by reference.

98.     Trilogy had and has an existing protectable right in its contractual relationship with Thomas, its former employee.  The confidentiality provision contained in Trilogy's Employee Handbook is a valid and legally enforceable contract, ancillary to Trilogy's employment relationship with Thomas, supported by adequate consideration and entered into freely by Thomas without duress or compulsion.

99.     Upon information and belief, Defendants had knowledge of Thomas' contractual relationship with Trilogy, and knew that Trilogy (like many government contractors) enters into agreements with its employees that contain confidentiality provisions.

100.    Defendants were also fully aware that Thomas held only a business development role at Trilogy and, thus, would not have possessed any technical skill or expertise of her own relevant to the 2021 VA Contract.  Defendants were also aware of the highly confidential nature of federal procurement bids and proposals.

24

101.    Upon information and belief, Defendants, either directly or through the actions of another, acted intentionally and without justification or excuse by causing Thomas to breach her contractual obligations to Trilogy by communicating Trilogy's Confidential Information to them.

102.    In tortiously interfering with Trilogy's contractual relationship with Thomas, Defendants used improper means and/or had improper motive.

103.    As a direct and proximate result of tortious interference by Defendants, Trilogy has suffered damages in an amount to be proven at trial.

104.    Because Defendants' conduct was malicious or accompanied by a wanton and willful disregard of persons who might foreseeably be harmed by their actions, Trilogy is further entitled to punitive damages.

**COUNT V**

**Tortious Interference with Prospective Business Relationship**
**(Against All Defendants)**

105.    Trilogy incorporates Paragraphs 1 through 104 above by reference.

106.    Trilogy has a protectable interest and valid expectancy in maintaining its business relationship with the VA, which has been cultivated, obtained, and maintained through the investment of substantial time, effort, and expense.

107.    Trilogy and the VA had a pre-existing business relationship that began with the VA's engagement of Trilogy in 2016 and resulted in a positive relationship between the two parties.

108.    Defendants had knowledge of Trilogy's relationship with the VA.

109.    Defendants willfully, knowingly, and without privilege, justification, or excuse, tortiously interfered with Trilogy's customer relationship by using improper means, which included employing Defendant Thomas; impairing and appropriating Trilogy's business with the

VA; improperly soliciting employees using VA resources; undermining Trilogy's business relationship with the VA by misappropriating Trilogy's trade secrets; and by Defendants otherwise unfairly competing with Trilogy.

110.    But for Defendants' tortious interference with Trilogy's prospective business relationship with the VA, it is commercially reasonable to conclude that Trilogy would have been awarded the 2021 VA Contract.  This is evidenced by the VA's engagement of Trilogy in 2022 and the VA's recently issued 2024 RFI and RFP, among other things.

111.    Defendants' tortious interference is outside the scope of mere competition, and it has proximately caused Trilogy damages through its loss of the 2021 VA Contract, including but not limited to the compensation and benefits Trilogy would have received had the 2021 VA Contract been awarded to B3 and Trilogy.

112.    Such tortious interference, in disregard of Trilogy's prospective business relationship with the VA, has been deliberate, willful, and malicious, and of such an aggravated character as to warrant imposition of punitive damages, attorney's fees and costs, in addition to compensatory damages.

## JURY DEMAND

113.    Pursuant to Fed. R. Civ. Pro. 38(b), Plaintiff requests a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Trilogy Federal, LLC prays for a judgment:

a.    That the acts of Defendants constitute misappropriation of Trilogy's trade secrets under state law and/or the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.*, and other applicable laws;

b.   That the acts of Defendant Thomas constitute breach of contract;

c.   That the acts of Defendants constitute tortious interference with Trilogy's contract with Thomas;

d.   That the acts of Defendant constitute tortious interference with Trilogy's prospective business relationship with the VA;

e.   Awarding Trilogy compensatory damages in an amount to be proven at trial;

f.   Awarding Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action;

g.   Awarding Trilogy pre-judgment interest on all amounts awarded and post-judgment interest until paid, at a lawful rate; and

h.   Awarding any such other relief as the Court deems just and equitable.

Dated: September 23, 2024                    Respectfully submitted,

_____
Jennifer Ancona Semko (Bar No. 481119)
Brian Whisler (Bar No. 1014064)
Grayson Myers (Bar No. 90021305)
BAKER & McKENZIE LLP
815 Connecticut Avenue NW
Washington, D.C. 20006
Tel: +1 202 452 7000
Fax: +1 202 416 7055
jennifer.semko@bakermckenzie.com
brian.whisler@bakermckenzie.com
grayson.myers@bakermckenzie.com

**ATTORNEYS FOR PLAINTIFF
TRILOGY FEDERAL, LLC**