UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRILOGY FEDERAL, LLC,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>CIVITASDX, LLC, *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 24-cv-2713 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM AND ORDER**

Defendants CivitasDX LLC ("CivitasDX"), Cognitive Medical Systems, Inc. ("CMS"), Halfaker and Associates, LLC ("Halfaker"), Science Applications International Corporation ("SAIC"), Client First Technologies, Inc. ("Client First"), and Kila Thomas (collectively, "defendants") moved to consolidate this case with a related case, *Trilogy v. General Dynamics Information Technology, Inc.*, 24-cv-2772 (BAH) ("GDIT case"), and stay this case pending the arbitration in the GDIT case. *See* Defs.' Mot. to Consolidate & Stay ("Defs.' Mot."), ECF No. 49; Defs.' Mem. in Supp. of Mot. to Consolidate & Stay ("Defs.' Mem."), ECF No. 49-1. For the reasons explained below, defendants' motion is denied.

**I.　　PROCEDURAL BACKGROUND**

The factual background is set out in detail in this Court's memorandum opinion and regarding defendants SAIC and Halfaker's motion to dismiss, ECF No. 43. The facts relevant to the pending motion are summarized here.

Trilogy, a small government contractor with expertise in specific financial management systems, Compl. ¶ 1, ECF No. 1, sued six defendants in the instant litigation, alleging misappropriation of Trilogy's trade secrets, in violation of the Defend Trade Secrets Act, 18

1

U.S.C. §§ 1836, *et seq.*, and the District of Columbia Uniform Trade Secrets Act, D.C. Code §§ 36-401, *et seq.*, and tortious interference with its prospective business relationship with the U.S. Department of Veteran Affairs ("VA") through defendants' submission of a bid in 2021 for a contract to manage its financial systems.  Compl. ¶¶ 60-87, 105-112.  Plaintiff also alleged breach of contract by Thomas, Compl. ¶¶ 88-96, and tortious interference of its contract with Thomas by five of the defendants, Client First, CivitasDX, CMS, Halfaker, and SAIC, *id.* ¶¶ 97-104.  At the same time, Trilogy sued GDIT in a separate suit, bringing the same claims for misappropriation of trade secrets and tortious interference with its prospective business relationship with the VA.  *See* GDIT Case, Compl. ¶¶ 63-97, ECF No. 1.

      This Court, observing that the claims and facts were substantially the same across the two cases, despite the different defendants, ordered Trilogy to show cause why the two cases should not be consolidated.  *See* Min. Order (Nov. 13, 2024).  Trilogy responded that it had "no objection to the consolidation of the two cases" but filed them separately "to avoid triggering a potential conflict of interest" given that Trilogy's counsel in this litigation also represents an affiliate of GDIT.  *See* Pl.'s Resp. to Show Cause Order at 1, ECF No. 26.  Trilogy has different counsel in the case against GDIT.  *See id.*  The Court therefore ordered counsel in both cases to simply coordinate briefing schedules with one another but left the litigations separate.  *See* Min. Order (Nov. 26, 2024).

      In this case, two defendants, CivitasDX and CMS, subsequently moved to stay or dismiss this case pursuant to the first-to-file rule in light of a related, inverse suit (brought by CivitasDX and CMS against Trilogy) in the Southern District of California.  *See* Defs.' CivitasDX and CMS's Mot. to Stay or Dismiss, ECF No. 31.  That motion was denied.  *See* Mem. Op. & Order, ECF No. 40.  Two other defendants, SAIC and Halfaker, filed a motion to dismiss the claims

asserted against them (misappropriation of trade secrets, tortious interference with contract, and tortious interference with prospective business relationship) under Federal Rule of Civil Procedure 12(b)(6), SAIC & Halfaker's Mot. to Dismiss, ECF No. 30, which was granted in part and denied in part, *see* Mem. Op., ECF No. 43.  The Court dismissed without prejudice the tortious interference claims against these two defendants, counts four and five of the original complaint.  *See id.*  A schedule for future proceedings was set at the end of February, with written discovery starting February 26, 2025, fact discovery completed by October 27, 2025, and depositions and expert discovery completed by January 29, 2026.  *See* Min. Order (Feb. 26, 2025).

Trilogy then filed an amended complaint, Am. Compl., ECF No. 48, with additional factual allegations, reasserting all of the claims, including the dismissed counts.  Defendants responded to this amended complaint, and CivitasDX and CMS asserted fifteen counterclaims.  *See* Defs.' CivitasDX & CMS's Answer & Counterclaims ("Defs.' Counterclaims"), ECF No. 50; Client First & Thomas's Answer, ECF No. 51; SAIC & Halfaker's Answer, ECF No. 52.

In the GDIT case, GDIT moved to compel arbitration, which was granted.  *See* GDIT case, Mot. to Compel Arbitration, ECF No. 12; Mem. Op. & Order, ECF No. 18.  That case is now stayed pending arbitration.  *See id.*

Defendants then filed the motion currently before the Court.  *See* Defs.' Mot.  Trilogy opposed.  *See* Pl.'s Opp'n to Mot. to Consolidate & Stay ("Pl.'s Opp'n"), ECF No. 53.  Defendants replied.  *See* Defs.' Reply in Supp. Mot. to Consolidate & Stay ("Defs.' Reply"), ECF No. 55.

While that briefing was ongoing, the Southern District of California action brought by CivitasDX and CMS against Trilogy was transferred to this Court, and those two defendants

...

moved, with Trilogy's consent, to consolidate that case with the instant one, *see* Consent Mot. to Consolidate, ECF No. 54, which motion was granted, *see* Min. Order (Apr. 3, 2025). Accordingly, as of now, all claims involving defendants and Trilogy are combined in this case, and all claims against GDIT remain separate and before an arbitral panel.

## II.   LEGAL STANDARD

### A.   Case Consolidation

Federal Rule of Civil Procedure 42(a) gives district courts the authority to order consolidation for actions involving a "common question of law or fact" pending before the court. FED. R. CIV. P. 42(a)(2). The decision to consolidate is "left to the sound discretion" of the district court. *Moten v. Bricklayers, Masons & Plasterers Int'l Union of Am.*, 543 F.2d 224, 228 n.8 (D.C. Cir. 1976); *United Bhd. Of Carpenters & Joiners of Am. v. Operative Plasterers' & Cement Masons' Int'l Ass'n of Am. & Can.*, 721 F.3d 678, 689-90 (D.C. Cir. 2013) (reviewing the denial of a motion for consolidation for "abuse of discretion"); *Santucci v. Pignatello*, 188 F.2d 643, 645 (D.C. Cir. 1951) (explaining that if two cases have common factual questions and are pending before the same court, "the question of consolidation [i]s therefore a matter within the sound discretion of the "District Court" that "will not be disturbed on appeal except for abuse"). Courts exercise that discretion by weighing risks of prejudice, confusion, and inconsistent adjudication of common issues, the burdens on the parties and the court, and benefits of efficiency. *See Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985).

### B.   Staying Proceedings

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The "decision to

...

grant a stay . . . is 'generally left to the sound discretion of district courts.'" *Ryan v. Gonzales*, 568 U.S. 57, 74 (2013) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). The court must "weigh competing interests and maintain an even balance" of such interests. *Landis*, 299 U.S. at 255.

A district court may exercise its discretion to "defer discovery or other proceedings pending the prompt conclusion of" another related proceeding, including an "arbitration." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket."); *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979). "This rule . . . does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva*, 593 F.2d at 863-64. In other words, "the parties to the two causes" need not "be shown to be the same and the issues identical," if the other proceeding will likely "narrow the issues in the pending cases and assist in the determination of the questions of law involved." *Landis*, 299 U.S. at 253-54.

Whether such a "stay is immoderate" depends on the particular circumstances of the case. *Landis*, 299 U.S. at 257; *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724,732 (D.C. Cir. 2012) ("The scope of the stay and the reasons for its issuance determine whether a stay is immoderate."). A court "abuses its discretion in ordering a stay 'of indefinite duration in the absence of a pressing need.'" *Belize Soc. Dev.*, 668 F.3d at 731-32 (quoting *Landis*, 299 U.S. at 255). "[T]he suppliant for a stay must make out a clear case of hardship or inequity in being

5

required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255.

## III. DISCUSSION

Defendants make two requests: that this Court consolidate the instant action with the GDIT case, 24-cv-2772, and then stay this action pending the ongoing arbitration in that case. Consolidation is not warranted given that the two cases are now in different postures, with the GDIT case stayed pending arbitration, and further, a stay in light of that arbitration would delay this case indefinitely, potentially accruing harm to Trilogy, and would not resolve all of the issues, making any potential benefits to efficiency minimal and speculative. Consequently, both requests are denied.

### A. Consolidation

While the Court has the authority to consolidate the two cases, under Federal Rule of Civil Procedure 42(a), given that the two cases have overlapping facts and legal claims, the relevant factors of prejudice, confusion, common questions, efficiency, and burdens on the Court and the parties militate against consolidation at this time. *See Singh v. Carter*, 185 F. Supp. 3d 11, 18 (D.D.C. 2016). The Court previously considered that consolidation might be beneficial, *see* Minute Order (Nov. 13, 2024), but given that Trilogy preferred leaving the cases separate due to a potential attorney conflict and defendants did not then move for consolidation, *see* Pl.'s Resp. to Show Cause Order, the cases were left proceeding on parallel but separate tracks, *see* Minute Order (Nov. 26, 2024). Trilogy has not reraised the potential conflict issue at this juncture—and perhaps it has been obviated. *See* Pl.'s Opp'n. Regardless, the GDIT case is now in a completely different posture from this case, given that it is stayed and an arbitration is pending, which may foreclose the need for this Court to rule on any of the claims in that case at all. *See Stewart v. O'Neill*, 225 F. Supp. 2d 16, 21 (D.D.C. 2002) (noting that "the cases are in

6

vastly different procedural postures" as weighing against consolidation). There is no apparent benefit to combining the two matters.

Defendants make two arguments in favor of consolidation. First, defendants argue that both cases share a "common threshold question of . . . alleged trade secrets ownership" and that consolidation would aid efficiency in making that determination. Defs.' Mem. at 8-9. To the contrary, the Court will not make the determination of trade secrets ownership in the GDIT case, as all of the claims are pending in arbitration, so consolidating the cases alone will not have any benefit to judicial efficiency on that basis. Second, defendants assert that they "will likely suffer undue prejudice[] [w]ithout such consolidation [because] [d]efendants in this case would be required to pursue discovery from GDIT as a third party through subpoenas with all of their limitations concurrent with the GDIT arbitration." Defs.' Mem. at 9. Defendants do not explain, however, how the need to pursue discovery from GDIT as a third party would cause them undue prejudice or impair their ability to defend their claims. Given that no other factor weighs in favor of consolidation—where the GDIT case is in a different posture and involves a different defendant—consolidation is not warranted at this point.

**B.     Stay**

While this Court, again, has the authority to stay the instant litigation in light of the pending related arbitration, *Moses H. Cone Mem'l Hosp.* 460 U.S. at 20 n.23, the interests of efficiency and fairness to the parties do not weigh in favor of doing so. *See DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 31 (D.D.C. 2002).

As an initial matter, a stay will not significantly benefit judicial efficiency here. Defendants argue that a stay is warranted because "the GDIT arbitration will determine the threshold questions . . . of whether GDIT or Trilogy owns the alleged trade secrets, and whether Trilogy took adequate protections for those alleged trade secrets in its communications with

7

GDIT." Defs.' Mem. at 10-11.  According to defendants, if Trilogy loses on those issues in the arbitration, it would be barred from re-litigating them here based on collateral estoppel, so having the parties prepare to litigate such issues here is inefficient.  *See id.* at 11.

Defendants are correct about the possibility that the arbitrator could decide the trade secrets do not belong to Trilogy at all, and defendants could try to use non-mutual collateral estoppel to require such a finding in this case, which could affect the outcome of Trilogy's trade secrets claims.  *See Hammad v. Lewis*, 638 F. Supp. 2d 70, 74 (D.D.C. 2009) ("Decisions of an arbitration panel normally provide the type of finality sought by courts to be protected by collateral estoppel.").  Yet, even assuming that possibility occurred and defendants succeeded in precluding re-litigation of the ownership issue here, that would not resolve all of the claims.  Any findings about trade secrets would not resolve the tortious interference with contract, breach of contract, or tortious interference with business relationship claims, counts three through five of the Amended Complaint, ¶¶ 98-122.  Nor will the arbitration have an impact on most of the fifteen counterclaims asserted by defendants against Trilogy (or many of those transferred in from the Southern California litigation).  *See* Defs.' Counterclaims ¶¶ 58-156; *CivitasDX v. Trilogy*, 25-cv-792, Compl. ¶¶ 36-81, ECF No. 1.  That distinguishes this case from one cited by defendants, Defs.' Reply at 6, *United States ex rel. Milestone Tarant, LLC v. Fed. Ins. Co.*, 672 F. Supp. 2d 92 (D.D.C. 2009), where the "concern [wa]s not that the issues could simply be narrowed by arbitration.  Rather, arbitration would decide the relevant issues completely." *Id.* at 105.  Moreover, the possibility that the issues may be narrowed here is speculative: The arbitrator could resolve the trade secrets claims on any number of other grounds, the parties could settle, the arbitrator could decide Trilogy does have ownership and maintained control of

the trade secrets, or this Court could beat the arbitrator to a decision on the ownership question. Any of those other outcomes would in no way narrow the issues before the Court here.

Such a minor and speculative potential benefit to efficiency does not weigh in favor of staying the litigation, especially since the stay would be indefinite and likely result in a delay in resolution of this case. *See Armco Steel Co., LP v. CSX Corp.*, 790 F. Supp. 311, 316 n.1 (D.D.C. 1991) ("The Court may deny a request for a stay 'even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.'" (quoting *Terra Res. v. Burgin*, 664 F. Supp. 82, 90 (S.D.N.Y. 1987))). The parties to the arbitration just selected their arbitrators. *See* GDIT case, Joint Status Report (May 2, 2025), ECF No. 20. With discovery in this matter set to close in early 2026, an indefinite stay for an arbitration that appears to be moving slowly would likely significantly delay resolution of this case, accruing harm to Trilogy. Delaying discovery, in particular, could disadvantage Trilogy as evidence is lost and memories fade over time. *See* Pls.' Opp'n at 10; *DSMC, Inc.*, 273 F. Supp. at 31 (D.D.C. 2002) ("A stay issued prior to the completion of discovery is particularly problematic, as with time evidence may be lost and memories fade."). Defendants contend that because Trilogy waited years to file suit, further delay cannot cause them any harm, Defs.' Mem. at 12-13, but they cite no authority for such a contention. Regardless of when Trilogy initially filed, Trilogy should not be subject to unnecessary delay after a schedule has already been established and discovery opened in this case.

Further, defendants have demonstrated no "pressing need" to justify such a stay of "indefinite duration." *Belize Soc. Dev.*, 668 F.3d at 731-32 (quoting *Landis*, 299 U.S. at 255). Defendants assert that without a stay, they "will suffer undue prejudice by proceeding in parallel with the GDIT arbitration, where GDIT and Trilogy have access to more information regarding

9

trade secrets ownership than Defendants. . . . Trilogy will have access to developments in the GDIT arbitration apart from this case." Defs.' Mem. at 12. Yet defendants do not explain why they could not, as plaintiffs suggest, seek through a "document request . . . documents obtained via the arbitration," Pl.'s Opp'n 9, or otherwise request the documents they would like to receive from Trilogy or GDIT via ordinary party or non-party subpoenas. Defendants' vague concerns about unequal access to discovery do not constitute a "pressing need" for a stay. Defendants also reference being "forced to litigate purely duplicative issues that could be resolved in the arbitration." Defs.' Reply at 9. Defendants again overlook the hypothetical built into their apparent hardship: Those issues may not be resolved in the arbitration at all.

Consequently, "judicial economy will not be served by granting a stay." *DMSC*, 273 F. Supp. 3d at 31. As another judge on this court concluded when facing similar circumstances, "It is unclear how long the arbitration proceeding will take time to complete. Postponing the resolution of the issues raised in this case for some indefinite time does not comport with the efficient and timely judicial resolution of matters before the federal courts. Allowing a case to languish for years on this Court's docket would not serve the interest of this Court or the parties involved. A stay issued prior to the completion of discovery is particularly problematic, as with time evidence may be lost and memories fade. Because this Court ultimately must resolve the issues presented by this case, that resolution will occur in a timely manner." *Id.*[1] "If that means that litigation must proceed in this Court against [defendants], while [GDIT] asserts its right to arbitrate any disputes between it and [Trilogy]," *id.*, '[t]hat misfortune . . . occurs because the

---

[1] Defendants argue that *DMSC*, 273 F. Supp. 2d 14, is inapposite because the decision there rested, in part, on the fact that the court would not be "bound by the determination of the arbitrator," but "since that time, the D.C. Circuit has stated definitively . . . that claims and issues litigated unsuccessfully by a plaintiff in arbitration *can* have preclusive effect via collateral estoppel and res judicata." Defs.' Reply at 7. Defendants cite, however, a D.C. Court of Appeals case, not one from the D.C. Circuit. *See id.* (citing *Walker v. FedEx Off. & Print Servs., Inc.*, 123 A.3d 160 (D.C. 2015)). In any case, *DMSC* did not rely solely on that fact and its reasoning about other fairness and efficiency considerations is instructive. *See* 273 F. Supp. 2d at 31-32.

relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement,'" *id.* at 31-32 (alterations in original) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 19-20).

## IV.     CONCLUSION & ORDER

For these reasons, defendants' motion to consolidate and stay, ECF No. 49, is denied, and the instant litigation will proceed as scheduled.

**SO ORDERED**.

Date:  May 5, 2025

_____
**BERYL A. HOWELL**
United States District Judge
